UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA                    Case No. 1:13-cr-145-SEB-TAB-01

                                             ORDER ON MOTION FOR
v.                                           SENTENCE REDUCTION UNDER
                                             18 U.S.C. § 3582(c)(1)(A)
CHARLES ELLIS                                (COMPASSIONATE RELEASE)

     Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction

in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors

provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing

Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-00145-SEB-TAB |
| | ) | |
| CHARLES ELLIS, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Pending before the Court is Charles Ellis's Motion for Compassionate Release, dkt. [42],
filed pursuant to § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239
(2018), which is codified at 18 U.S.C. § 3582(c)(1)(A). Mr. Ellis seeks immediate release and the
reduction of his sentence to time served or a modification of his sentence so that he can be released
on home detention. For the following reasons, the motion is **DENIED**.

### I.
### BACKGROUND

On November 18, 2015, Mr. Ellis pleaded guilty to possession of a firearm by a convicted
felon in violation of 18 U.S.C. § 922(g)(1). Dkt. 18. According to the presentence investigation
report ("PSR"), Mr. Ellis had an advisory guidelines range of 84 – 105 months. Mr. Ellis's criminal
history included rape, residential entry, resisting law enforcement, dealing cocaine, and trafficking
cocaine, so he was criminal history category V. Dkt. 22, ¶¶ 27-35, 38. His offense level was found
to be 23. ¶ 21.

Mr. Ellis was sentenced to 84 months. Dkt. 28. Assuming 15% good-time credit, his actual
sentence would be 71.4 months. He has served 61.5 months, or approximately 86% of his sentence.

## II.
### DISCUSSION

In the motion, Mr. Ellis argues that the Court should grant him compassionate release because his health conditions make him vulnerable to serious health complications if he contracts COVID-19, creating extraordinary and compelling reasons warranting a sentence reduction. In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release. In response, the Government argues that Mr. Ellis has not presented extraordinary and compelling reasons for a sentence reduction and that his conduct and the § 3553(a) factors do not favor release.

### A. Standard

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Mr. Ellis requested compassionate release on May 29, 2020. Dkt. 42-1. The Warden denied his request on July 15, 2020. Dkt. 47-5. Accordingly, the merits of the motion for compassionate release are ripe for the Court's consideration under 18 U.S.C. § 3582(c).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied

and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). The Court must also determine whether Mr. Ellis is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions

---

[1] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).[2]

**B. Analysis**

Mr. Ellis does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case. Mr. Ellis argues that extraordinary and compelling reasons support compassionate release because he suffers from leukopenia, thrombocytopenia, and a Vitamin D deficiency, and because he is a Black male.

---

[2] The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Ellis's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

First, Mr. Ellis has been diagnosed with leukopenia and thrombocytopenia. Leukopenia is a low white blood cell count[3] and thrombocytopenia is a low platelet count.[4] On October 16, 2019, Mr. Ellis was assessed at the Hematology Telemedicine Clinic for his history of leukopenia and thrombocytopenia. Dkt. 52-1. The doctor's assessment stated the following, among other things:

> The occurrence of a mild chronic, in fact lifelong, leukopenia is common in certain parts of Africa, and actually is within the normal range for those areas. Thus, about 10% of American men who have African ancestry have a mild to moderate leukopenia, and probably this is a congenital finding that is termed benign ethnic neutropenia. I believe that is part of Mr. Ellis's reasons for having, again, a low white blood cell count by American standards.

*Id*. at 1.

On or about December 18, 2019, Mr. Ellis went was assessed again at the Hematology Telemedicine Clinic and the clinical notes state as follows:

> This is a second Hematology Telemedicine Clinic visit for Mr. Charles Ellis, a 46-year-old man who I saw originally in the telemedicine clinic in October 2019 for a history of chronic leukopenia and mild thrombocytopenia. At the initial visit, I felt that Mr. Ellis most likely had African American ancestry that was consistent with a benign ethnic neutropenia, which is well known to be essentially normal for certain parts of Africa. Nevertheless, he had a slightly high globulin fraction

---

[3] "A low white blood cell count (leukopenia) is a decrease in disease-fighting cells (leukocytes) in your blood….The definition of low white blood cell count varies from one medical practice to another. In general, for adults a count lower than 4,000 white blood cells per microliter of blood is considered a low white blood cell count….Some people who are otherwise healthy have white cell counts that are lower than what's usually considered normal, but which are normal for them." Mayo Clinic, *Low white blood cell count*, https://www.mayoclinic.org/symptoms/low-white-blood-cell-count/basics/definition/sym-20050615#:~:text=A%20low%20white%20blood%20cell,one%20medical%20practice%20to%20another (last visited Oct. 12, 2020).

[4] "Thrombocytopenia is a condition in which you have a low blood platelet count. Platelets (thrombocytes) are colorless blood cells that help blood clot….Thrombocytopenia might occur as a result of a bone marrow disorder such as leukemia or an immune system problem. Or it can be a side effect of taking certain medications….Thrombocytopenia can be mild and cause few signs or symptoms. In rare cases, the number of platelets can be so low that dangerous internal bleeding occurs." Mayo Clinic, *Thrombocytopenia (low platelet count)*, https://www.mayoclinic.org/diseases-conditions/thrombocytopenia/symptoms-causes/syc-20378293 (last visited Oct. 12, 2020).

and I wanted to rule out liver disease as well as a monoclonal protein. Both of these studies were performed. The abdominal ultrasound showed a normal size liver and a normal sized spleen with no evidence of liver disease or fatty liver infiltration….

Assessment and Plan: Mr. Ellis, who has no complaints today appears to have chronic, probably lifelong mild neutropenia, again which is a well known variant in African American individuals, particularly men. It does not indicate any significant medical problem, and does not increase the risk for infection. Certainly, there is no evidence for liver disease and no evidence for any monoclonal protein or infiltration that would be related to a plasma cell dyscrasia. These counts have been relatively stable and I would recommend that at this point just following them perhaps twice a year with a repeat CBC and differential. The mild thrombocytopenia is a little less clear in terms of etiology as compared to the leukopenia, but again appears to be stable and close to the normal lower limit, again, the most recent one being 142,000 and again, the lower limit usually being about 150,000. I do not believe there is any other reason for intervention other than, again continued surveillance.

*Id.* at 6.

Mr. Ellis argues that his leukopenia puts him at increased risk for severe illness if he contracts COVID-19 because having a low white blood cell count compromises his immune system. The CDC states that people with immune deficiencies might be at increased risk for severe illness.[5] But, as noted above, Mr. Ellis's medical records indicate that his leukopenia is mild and his provider has indicated that "[i]t does not indicate any significant medical problem, and does not increase the risk of infection." Dkt. 57-1, at 6.

Mr. Ellis also claims that his vitamin D deficiency puts him at increased risk of serious illness. He argues that studies show that the prevalence of severe vitamin D deficiency is strongly

---

[5] CDC, *People with Certain Medical Conditions* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Oct. 12, 2020).

correlated with COVID-19 mortality rate.[6] Mr. Ellis's medical records reflect that he is taking a supplement for a Vitamin D deficiency. Dkt. 47-2. But there is no evidence of the severity of his Vitamin D deficiency or that the supplements are not helping address it. The CDC also has not identified Vitamin D deficiency as a condition that puts a person at increased risk of severe illness from COVID-19.

Mr. Ellis notes that he has thrombocytopenia, but he does not claim that the condition puts him at risk of severe COVID-19 symptoms.  The CDC also has not identified thrombocytopenia as a condition that might increase the risk of severe COVID-19 symptoms.

Finally, Mr. Ellis argues that his status as a Black male makes him more vulnerable to COVID-19. The CDC has recognized that some racial and ethnic minority groups are being disproportionately affected by COVID-19 because of "[l]ong-standing systemic health and social inequities" including poverty, lack of access to healthcare, and concentration in essential work settings.[7] But Mr. Ellis does not explain whether the CDC's general guidance about race applies to incarcerated populations, which have unique characteristics.

Based on its consideration of Mr. Ellis's medical conditions, his status as a Black man, and his incarceration, the Court finds that Mr. Ellis has not shown extraordinary and compelling reasons entitling him to compassionate release under the First Step Act. The remaining factors for granting compassionate release therefore need not be considered.

---

[6] Medical Life Sciences News, *More evidence on vitamin D deficiency and death rates from COVID-19*, https://www.news-medical.net/news/20200702/More-evidence-on-vitamin-D-deficiency-and-death-rates-from-COVID-19.aspx (last visited Oct. 12, 2020).

[7] *See* CDC, *Health Equity Considerations and Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html (last visited Oct. 12, 2020).

## III.

### CONCLUSION

For the reasons stated above, Mr. Ellis's Motion for Compassionate Release, dkt. [42], is

**denied**.

**IT IS SO ORDERED.**

Date:  10/14/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

9